23083

Janis F. DONAHUE, Respondent v. James M. DONAHUE, Appellant.
(384 S. E. (2d) 741)

Supreme Court

*Harvey L. Golden* and *Douglas K. Kotti,* Columbia, *for appellant.*

*Victoria L. Eslinger* and *Deborah R. J. Shupe,* Columbia, *for respondent.*

Heard May 3, 1989.

Decided Sept. 25, 1989.

HARWELL, Justice:

This is a domestic case involving alimony, child support, equitable distribution, inclusion of goodwill in the valuation of a professional practice and attorneys' fees. We affirm in part, reverse in part, and remand.

## FACTS

The parties in this case were married on February 15, 1979. The husband is 32 years old and the wife is 41 years old. The parties have a 7 year old child. The wife has two children from a previous marriage who had become emancipated at the time of this hearing and were no longer living with the parties.

In the Fall of 1979, the husband entered dental school. His family deposited money for his tuition and books into an account which he maintained separately. These funds were not used for household expenses or to otherwise support the family. Household expenses and money for family support[1] were provided by the wife during the four years the husband attended dental school and thereafter until the opening of his dental practice.

Upon the husband's graduation from dental school in the Spring of 1984, the parties moved to Columbia where they lived with the wife's family for 5 months before moving into their own home. In January of 1984, the husband opened his own dental practice. In order to fund the practice, the wife co-signed several loans, offering personal property as security. She also assisted the husband in preparing for the

---

[1] The wife received monthly child support payments from her former husband for the two children from her previous marriage.

opening of the practice by selecting furniture and business cards and designing a business sign.

Sometime after the practice opened in 1984, the husband began having an extramarital affair. The parties experienced marital discord, and the husband left the marital home on several occasions, but returned each time shortly after leaving. Finally, after a series of these episodes the wife filed for divorce on the ground of adultery. After a final hearing held on September 30, and October 8, 1987, the judge issued an Order granting the divorce on the ground of adultery, awarding custody of the minor child to the wife, requiring the husband to pay child support and reserving the wife's right to alimony. The Order also distributed the marital property and awarded the wife attorneys' fees, detective fees and other costs associated with this action. The husband appeals all portions of the Order except child custody.

## DISCUSSION

### I. ADULTERY

The husband first argues that the family court erred in granting the wife a divorce on the ground of adultery. We disagree.

Adultery may be proven by either direct or circumstantial evidence or a combination of the two. Circumstantial evidence is just as good as direct evidence if it is equally convincing and establishes the disposition to commit the offense and the opportunity to do so. *Anders v. Anders*, 285 S. C. 512, 515, 331 S. E. (2d) 340, 342 (1985); *Fulton v. Fulton*, 293 S. C. 146, 359 S. E. (2d) 88 (Ct. App. 1987). We have reviewed the record in light of these standards and hold that it supports the family court's finding of adultery.[2] Written detective reports placed the husband at the home of his alleged paramour overnight on more than one occasion. The husband admitted spending the night with

---

[2] No findings are set forth in the family court's order to support this conclusion. While it is true that this lack of factual findings violates Family Court Rule 27 which directs that an order set forth the salient facts upon which it is based, we may consider the issue on appeal where, as here, the appellate record is sufficient for review. *McSwain v. Holmes*, 269 S. C. 293, 237 S. E. (2d) 363 (1977); *Sumter v. Sumter*, 280 S. C. 94, 311 S. E. (2d) 88 (Ct. App. 1984).

his paramour and to sleeping in her bed. There was additional testimony from the wife as to her observation of the paramour's car outside the husband's office all night. There was a bed in the office. Further, during deposition, the husband admitted that he knew his wife had "the goods on him." Ample evidence existed to support a grant of divorce on the ground of adultery.

## II. HUSBAND'S DENTAL PRACTICE

### A. INCLUSION IN MARITAL ESTATE

The trial court found that because of the wife's substantial contribution to the husband's dental practice, she was entitled to an equitable interest in the practice. The husband contends that this was error and cites as authority for this proposition the cases of *Helm v. Helm*, 289 S. C. 169, 345 S. E. (2d) 720 (1986) and *Heath v. Heath*, 295 S. C. 312, 368 S. E. (2d) 222 (Ct. App. 1988).

In *Helm* and *Heath*, this Court and the Court of Appeals, respectively, held that a professional degree is not marital property and is therefore not subject to equitable distribution. Here, however, we are concerned not with the appellant's *degree*, but with his practice, therefore *Helm* and *Heath* are inapplicable.

One spouse's contributions to another spouse's business may create a special equity in his or her favor. *Poniatowski v. Poniatowski*, 275 S. C. 11, 266 S. E. (2d) 787 (1980). It is not error to consider the assets of a spouse's business in the division of marital property given evidence that wife materially contributed through personal services to that business. *Reid v. Reid*, 280 S. C. 367, 312 S. E. (2d) 724 (Ct. App. 1984).

Here, the wife's contributions entitled her to an interest in the husband's business. We therefore hold that the family court judge in this case did not err in including the value of the dental practice in the estate; we disagree, however, with the judge's inclusion of goodwill in the valuation of the practice.

### B. INCLUSION OF GOODWILL IN VALUATION

Appellant argues that the family court erred in allowing the goodwill of his dental practice to be valued and equitably

distributed. The issue of whether goodwill is subject to equitable distribution was first addressed by this Court in *Casey v. Casey*, 293 S. C. 503, 362 S. E. (2d) 6 (1987). In *Casey*, we recognized the speculative nature of goodwill, which is dependent upon an owner's future earnings, and held that such goodwill could not be made part of the marital estate subject to equitable distribution. In the present case, we must decide whether the holding in *Casey* should be extended to apply to goodwill in a professional solo practice.

The decision as to the inclusion of goodwill of a professional practice in a marital estate is, "in the final analysis, a public policy issue." *Powell v. Powell*, 231 Kan. 456, 648 P. (2d) 218, 223 (1982). The following is a well-recognized definition of goodwill:

> Goodwill may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

*Levy v. Levy*, 164 N. J. Super. 542, 549, 397 A. (2d) 374, 377 (1978) citing *In re Ball's Estate*, 161 App. Div. 79, 80-1, 146 N. Y. S. 499, 501 (1914).

More specifically, professional goodwill has been held to have the following attributes:

> It attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. [Cite omitted.] It does not possess value or constitute an asset separate and apart from the professional's person, or from his individual ability to practice his profession. It would be extinguished in the event of the professional's death, retirement or disablement. [Cite omitted.]

*Rathmell v. Morrison*, 732 S. W. (2d) 6 (Tex. App. 14th Dist. 1987).

"The very nature of a professional practice is that it is totally dependent upon the professional." *Powell*, 648 P. (2d) at 223. The definitions set forth above indicate the intangible nature of the goodwill asset. It is this intangibility which inevitably results in a speculative valuation. The basis of this Court's concern in *Casey* was the speculative element involved in valuation of goodwill. In light of the definitions above, we see similar problems in the valuation of goodwill of a professional practice.

Accordingly, we hold that the family court erred in placing a value upon, and consequently dividing the goodwill of the husband's dental practice. Because the expert testified that the only value of the practice was its goodwill, the wife is not entitled to any money from the practice.

### III. POSSESSION OF MARITAL HOME

The judge awarded the wife title to the marital home, specifically allowing that this would serve as part of her equitable distribution award. Appellant incorrectly contends that this was error and that title to a marital home can only be awarded as an incident of support, and then only if compelling circumstances exist.

In order to effect an equitable apportionment, the family court may require the sale of marital property and a division of the proceeds. S. C. Code Ann. § 20-7-476 (Supp. 1987). The court should first attempt an "in-kind" distribution of the assets. *Stevenson v. Stevenson*, 295 S. C. 412, 415, 368 S. E. (2d) 901, 903 (1988). A family court may grant a spouse title to the marital home as part of the equitable distribution. *Brown v. Brown*, 279 S. C. 116, 302 S. E. (2d) 860 (1983).

Here, the wife received the marital home as her share of the total marital estate, not as an incident of support. Part of the reason she was awarded the home was to compensate her for the $23,000 she was entitled to as a result of contributions to the husband's dental practice. Since we have ruled above that she was not entitled to this $23,000, as it was based only on goodwill, we must also remand the award of the marital home for reconsideration. Accordingly, while the husband is incorrect in arguing that the court could not

award the wife title, we must nonetheless remand because of our decision on the goodwill issue.

## IV. EQUITABLE DISTRIBUTION

The facts in this case established that the wife's direct contributions to the marital estate totalled $251,000.00 (91%), whereas the husband's direct contributions totalled $20,112.00 (9%). The judge lowered the wife's share of the equitable distribution to 62% and raised the husband's share to 38%. The Order fails to set forth sufficient reason entitling the husband to such a high percentage of the marital property other than his "indirect contributions" over a 4 month period. In light of the husband's minimal direct contributions, we are unable to ascertain any reason for allowing him such a high percentage of the total estate. For this reason, and because we are remanding a number of issues in this case which will impact on the equitable distribution, we remand the percentages for reconsideration.

## V. RESERVATION OF ALIMONY

The husband next argues that the family court erred in reserving an award of alimony to the wife. We agree.

"The general rule is that alimony may be granted after a decree of divorce if [the] right to have it subsequently determined is reserved in the divorce decree." *Taylor v. Taylor*, 241 S. C. 462, 466, 128 S. E. (2d) 910, 912 (1962). Where the divorce decree does not provide for alimony and there is no reservation of jurisdiction in the decree, such is final and absolute and the wife cannot be allowed alimony in any subsequent proceeding. *Id.* While reservation of alimony is a mechanism available to family court judges in proper cases, it is not to be used to avoid reaching the issue of whether alimony should or should not be awarded under the facts of a particular case. It should not be routinely included in the decree of divorce, for this unnecessarily prolongs the marital litigation.

Few cases in South Carolina have addressed the question of reservation of alimony. In *Lowe v. Lowe*, 256 S. C. 243, 182 S. E. (2d) 75 (1971), this Court upheld a family court's denial of alimony to a spouse whose situation at the time of trial

did not entitle her to such an award. Under the facts of that case, the wife was gainfully employed at the time of the hearing. She had previously experienced serious emotional problems, having undergone eighteen shock treatments while institutionalized for 6 weeks approximately 4 years prior to the divorce. She had also attempted suicide approximately 2 years before the divorce. Despite these problems, the wife was gainfully employed and had the ability to provide for herself at the time of the hearing. She was therefore not entitled to alimony. This Court noted however, that this was "one of those cases in which the court should have reserved jurisdiction in the decree such that the alimony issue may in the future be considered." 256 S. C. at 248, 182 S. E. (2d) at 78. The obvious implication of this decision is that even though the wife was not entitled to alimony at the time of trial, her past emotional problems, which had occurred during the course of the marriage, might recur to the point where she would be entitled to alimony. *Accord Stevenson, supra* (although the court properly denied alimony under the circumstances existing at the time of the decree, husband's preexisting disability entitled him to reservation of alimony); *Smith v. Smith,* 406 So. (2d) 71 (Fla. App. 2d Dist. 1981) (reservation of alimony should be made in light of fact that wife had undergone surgery for cancer and although wife did not have cancer at time of divorce, there was significant risk of the disease recurring at a later date).

The situations outlined above in *Lowe* and the cases cited in accord contrast sharply with the facts advanced to support reservation in the current case. Here the wife is able to provide for herself financially. She is, in fact, earning more money per month than her husband. She reserved her right to alimony, however, because even though her husband could not pay alimony at the time of the divorce, probable future success of her husband's dental practice would enable him to do so at a later date. Alimony is a substitute for support incident to the marital relationship. *Nienow v. Nienow,* 268 S. C. 161, 232 S. E. (2d) 504 (1977). It is not intended to penalize one spouse while rewarding the other. *Beasley v. Beasley,* 264 S. C. 611, 612, 216 S. E. (2d) 535, 536 (1975). The marriage contract is not an annuity; it is not lifetime insurance against the unexpected.

We hold that alimony may be reserved when there is a "determination that there exists an identifiable set of circumstances that is likely to generate a need for alimony in the reasonably near future." *Turrisi v. Sanzaro*, 308 Md. 515, 531, 520 A. (2d) 1080, 1088 (Ct. App. 1987) (concurring opinion); where, however, as here, there is no need for alimony at the time of trial; and no indication of physical or mental illness, foreseeable change in need in the future, or some other extenuating circumstance, the question of alimony should not be reserved. Accordingly, we reverse the reservation of alimony in this case, and find that permanent alimony should be denied.

## VI. REIMBURSEMENT ALIMONY

The concept of "reimbursement alimony" was first introduced by the New Jersey Supreme Court in *Mahoney v. Mahoney*, 91 N. J. 488, 500, 453 A. (2d) 527, 533 (1982), in which that court recognized that:

> Where a partner to marriage takes the benefits of his spouse's support in obtaining a professional degree or license with the understanding that future benefits will accrue and inure to both of them, and the marriage is then terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy.

Generally, the contribution of one spouse to the education of the other spouse may be taken into account by giving the supporting spouse a large distributive share of the marital property to be divided. This remedy is not, however, sufficient when little or no marital property has been accumulated during the marriage. In these situations reimbursement alimony may be appropriate, regardless of the appropriateness of permanent alimony.

Cases adopting reimbursement alimony "... establish a spectrum, from those narrowly focusing on financial support provided to the professional spouse, while he or she was a student, to those which consider the totality of the non-professional spouse's efforts in the family venture to obtain economic stability through education." *Martinez v. Martinez*, 754 P. (2d) 69, 77 (Utah App. 1988). Among those jurisdictions which consider the "totality of the non-profes-

sional spouses efforts," it has been held that a court should consider "all relevant factors" including the "amount of the supporting spouse's contributions, his or her foregone opportunities to enhance or improve professional or vocational skills, and the duration of the marriage following completion of the non-supporting spouse's professional education." *Saint-Pierre v. Saint Pierre*, 357 N. W. (2d) 250, 262 (S.D. 1984).

> In *Mahoney*, the court broadly held that: [R]eimbursement alimony should cover *all* financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses, and any other contributions used by the supported spouse in obtaining his or her degree or license.

91 N. J. at 501, 453 A. (2d) at 534.

Other jurisdictions which have focused only on the actual financial support have suggested the following formula as a guideline:

> working spouse's financial contributions to joint living expenses and educational costs of student spouse

less

> ½ (working spouse's financial contributions plus student spouse's financial contributions less cost of education)

equals

> equitable award to working spouse.

*DeLa Rosa v. DeLa Rosa*, 309 N. W. (2d) 755, 759 (Minn. 1981) cited in *Hoak v. Hoak*, 370 S. E. (2d) 473, 479 (W. Va. 1988). We favor the broader "all relevant factors" approach because it is more equitable than the strict financial contributions approach.

Obviously, money expended for the support of the parties' children should also be taken into consideration. Further, where, as here, there are children from a previous marriage living with the couple, consideration should be given to money expended by the working spouse in excess of the child support provided by her previous spouse.

Determination of the amount of reimbursement alimony is within the discretion of the trial judge. The amount will depend on the facts of each case. We therefore decline to set forth a specific mathematical formula for computing an amount, but rather direct the judge to consider "all relevant factors" as indicated above.

On remand, the wife shall be allowed to amend her pleadings, if she so chooses, to include a prayer for reimbursement alimony. We decline, however, to consider whether reimbursement alimony should be awarded, as we believe this issue merits full consideration first by a trial judge so that a record can be made for our review.

## VII. ATTORNEYS' FEES, AND COSTS

The husband was ordered to pay the wife a total of $9,462.00 for reimbursement of attorneys' fees and other expenses associated with this action. The husband contends this was error.

In awarding attorneys' fees and costs, the family court should consider the nature, extent and difficulty of the services rendered, the time necessarily devoted to the case, professional standing of counsel, contingency of compensation, beneficial results obtained, and the customary legal fees for similar legal services. *Atkinson v. Atkinson*, 279 S. C. 454, 457-8, 309 S. E. (2d) 14, 16 (Ct. App. 1983). An award of attorneys' fees and costs is a discretionary matter not to be overturned absent abuse by the trial court. *Stevenson*, 295 S. C. at 415, 368 S. E. (2d) at 903; *Cudd v. Arline*, 277 S. C. 236, 285 S. E. (2d) 881 (1981).

This was a complex divorce action involving several difficult issues, some of them novel in this jurisdiction. The beneficial results achieved by the wife are apparent. The wife's attorney faced difficulty and lack of cooperation from the husband, which serves as an additional basis for the award of attorneys' fees. *Johnson v. Johnson*, 296 S. C. 289, 303-4, 372 S. E. (2d) 107, 115 (Ct. App. 1988). The wife achieved her divorce on the basis of adultery. Reasonable and necessary expenses incurred in obtaining evidence of a spouse's adultery are recoverable in a divorce proceeding. *Stevenson*, 295 S. C. at 415, 368 S. E. (2d) at 903. We see no abuse of discretion in ordering the husband to pay

attorneys' fees and costs. Further, each party shall bear their own costs of this appeal.

Appellant's remaining exceptions are dismissed pursuant to Supreme Court Rule 23.

Affirmed in part; reversed in part; and remanded.

GREGORY, C. J., and CHANDLER, FINNEY and TOAL, JJ., concur.