THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 John Graham Heller, Jr., Respondent,
 v.
 Joyce McDonald Heller, Appellant.
 
 
 

Appeal From Newberry County
 John M. Rucker, Family Court Judge

Unpublished Opinion No. 2006-UP-128
Submitted January 1, 2006  Filed March 7, 2006

AFFIRMED AS MODIFIED

 
 
 
 H. Wesley Kirkland, Jr. and John S. Nichols, both of Columbia, for Appellant. 
 Donald Bruce Clark, of Charleston, for Respondent.
 
 
 

PER CURIAM:  In this divorce action, Joyce Heller contends the family court erred in its distribution of marital property and in failing to award attorneys fees.  We affirm as modified.  
FACTS
John Graham Heller (Husband) and Joyce McDonald Heller (Wife) married on November 26, 1989.  Both had adult children from previous relationships.  They separated on April 4, 2000 and Husband filed for divorce in July 2001.  During the marriage, Husband worked at Columbia Supply Company earning $5.30 per hour.  Wife was a teacher at Newberry High School for the first five years of the marriage.  She later resigned and did not work for two to three years until she obtained part-time employment with the census bureau.  She also taught summer school courses at Newberry College.  
During the marriage, the parties lived at 725 Caldwell Street in Newberry, South Carolina.  The marital home was titled in Wifes name.  She acquired the home for $188,000 approximately a year and a half before the parties met.  This home sold shortly after the parties separated for a net gain of approximately $267,000. 
The parties also owned rental properties at 723 Caldwell Street and 719 Caldwell Street.  Although 719 Caldwell Street was acquired by both parties from the proceeds of a note and mortgage, of which Husband was an obligor together with Wife, both properties were in Wifes name until they were sold on March 11, 2002.  After the parties separated, Wife entered into an installment sales contract to sell 719 Caldwell Street to her son for $36,000.  The property was previously valued on their 2000 Income Tax Return at $52,135 and was being depreciated as an investment property.  Prior to trial, the parties stipulated that 719 Caldwell Street was marital property.  Based in part on his role in obtaining the property, Husband asserted the difference in value between the amount Wife sold the property to her son and its value as reflected on their tax returns, should be credited towards the marital estate.
Throughout the marriage, Husband and Wife placed their incomes in a joint account, out of which Wife paid all the expenses associated with the marriage.  Wife testified that she voluntarily retired at the end of the 1994 school year as a full time employee of the Newberry County School District at a salary of more than $30,000 per year.  From that time forward, she drew regularly from her non-marital IRA account to assist with the parties living expenses.  In fact, she withdrew approximately $219,000 from her IRA during her eight-year period of unemployment.  
Husband maintained four retirement accounts, which earned approximately $123,000 during the marriage.  However, in his answers to interrogatories, Husband listed only his Thrift Savings Plan.  Husband testified that he failed to mention the other accounts because the Thrift Savings Plan was the only account to which he voluntarily contributed.  Husband denied he intentionally misled the court regarding the retirement accounts, but based his responses upon a misunderstanding.  
Both Husband and Wife testified that during the marriage they lived a lifestyle beyond their means.  As a result, the parties accumulated a great deal of credit card debt throughout the marriage.  The debt as of June 2001 was $33,700.  Husband and Wife also spent money to renovate their marital home.  Husband testified that he performed many repairs on the home, including replacing numerous support beams.  
Around June 2001, the couple mutually inventoried all property in the parties possession.  They agreed to conduct an auction to sell the majority of the marital assets as well as some non-marital assets.  The auction was held in June 2001 and the sale of marital assets generated $34,500.  Wife used the proceeds to pay off marital debt.  Much of the contention at trial came from the fact that after the parties separated, Husband moved out of the home and thereafter did not assist Wife in making the mortgage payments.  In fact, it was not until he was ordered to do so by the court that Husband contributed $498.00 a month to help with the mortgage payments.  Husband made those payments from December 2001 through March 2002. 
The family court concluded the parties marital contributions were nearly equivalent, with Wife contributing more income during the early years of the marriage and Husband contributing more income in the latter stages.  The family court ordered each party to be responsible for his or her own attorneys fees and costs.  Wife moved for reconsideration of this order.  Following a hearing, the family court amended the order to correct clerical mistakes and to account for Husbands three previously undisclosed retirement accounts.  The family court ordered Wife to pay Husband $1,465.76 to equalize and divide the equity in the marital property and debts.  The family court denied relief on all other issues raised in Wifes motion.  This appeal followed.    
STANDARD OF REVIEW
In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence.  Dearybury v. Dearybury, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).  However, this broad scope of review does not require us to disregard the family courts findings.  Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).  Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Lacke v. Lacke, 362 S.C. 302, 307, 608 S.E.2d 147, 150 (Ct. App. 2005).  Our broad scope of review does not relieve appellant of her burden to convince this court the family court committed error.  Skinner v. King, 272 S.C. 520, 522-23, 252 S.E.2d 891, 892 (1979).
LAW/ANALYSIS
I.      Transmutation of 725 and 723 Caldwell Street 
Wife contends the family court erred in finding a portion of the residence at 725 Caldwell Street and the adjoining apartment at 723 Caldwell Street were transmuted.  We affirm as modified.
Under the Equitable Apportionment of Marital Property Act, property acquired by either party before the marriage is nonmarital property.  S.C. Code Ann. § 20-7-473(2) (Supp. 2005).  In certain circumstances, however, nonmarital property . . . may be transmuted into marital property during the marriage.  Johnson v. Johnson, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1988), cert. denied, 298 S.C. 117, 378 S.E.2d 445 (1989).

 Property, nonmarital at the time of its acquisition, may be transmuted (1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is utilized by the parties in support of the marriage or in some manner so as to evidence an intent by the parties to make it marital property.  

Trimnal v. Trimnal, 287 S.C. 495, 497-98, 339 S.E.2d 869, 870 (1986).  Transmutation is a matter of intent to be gleaned from the facts of each case.  Johnson at 295, 372 S.E.2d at 110.  The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage.   Id. at 295, 372 S.E.2d at 111.
Husband contends the family court did not base its decision on the theory that the properties had been transmuted, but instead, based its decision on an award of a special equity.  In fact, Husband never sought a finding of transmutation.  However, the family court found that with regard to the marital residence a portion of it was transmuted.  The family court went on to state [t]he Plaintiff also during the marriage performed maintenance and repairs on the said property, thereby increasing the value of the property.  This [family] Court finds that the husband has 20% equity in 723-725 Caldwell home.  In explaining its order, the family court stated that its apportionment was based on [Husbands] efforts in working with the house and then the amount thats transmuted by the mortgage.  Additionally, Wife testified, and Husband confirmed, that Wifes will, executed early in the marriage, gave Husband a life estate in the marital home should she predecease him.  
The evidence produced at trial does not support a finding that the property was transmuted.  The mere use of separate property to support a marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation.  Id. at 295-96, 372 S.E.2d at 111.  In addition, the use of marital funds to make improvements to property, without more, is insufficient to establish intent to transmute property.  Stefan v. Stefan, 320 S.C. 419, 424, 465 S.E.2d 734, 737 (Ct. App. 1995).
In Husbands direct examination, his attorney inquired [n]ow, are you asking this court to award you a special  I am going to call it a special equity in the enhanced value of the home?  To which Husband answered yes.  At that point Husbands counsel said [a]ll right.  Now, your honor, may we approach?  I dont want to make an error.  Following an off-the-record discussion, Husbands counsel made his case for special equity and never mentioned transmutation.  During cross examination, Husband stated I still am not asking for part of the house . . . [but am asking for] [m]y sweat equity and also my financial contribution.
A spouse has a special equity in any increase in the value of nonmarital property during the marriage to the extent the increase resulted directly or indirectly from efforts of the spouse during marriage.  Webber v. Webber, 285 S.C. 425, 427-28, 330 S.E.2d 79, 81 (Ct. App. 1985).  Husband testified as to repairs he performed for the home including replacing numerous support beams.  The equitable interest in the properties awarded to Husband was substantiated by evidence presented at trial, and was therefore proper.  Though Husband is not entitled to have the property apportioned as transmuted property, he is entitled to a special equity.  
II.      Equitable Apportionment
The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion.  Bungener v. Bungener, 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct. App. 1987).  On appeal, this court looks to the overall fairness of the apportionment.  Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  If the end result is equitable, it is irrelevant that the appellate court would have arrived at a different apportionment.  Id.  
A. Rental Property Expenses
Wife contends the family court erred in failing to take into account expenses she incurred in the upkeep of the rental properties from the time of separation until the hearing.  She argues the court erred when it awarded Husband an interest in one-half of the rent received from 719 Caldwell Street and twenty percent of the rent from the garage apartment at 723 Caldwell Street.  We disagree.  
Wifes expenses included maintaining and repairing the property from the time of separation until the hearing, or at least until she sold the property.  During this time, Husband did not live in or maintain the house.  The trial court deducted from Husbands property 50% of the marital debt from 723 and 725 Caldwell Street paid by Wife during the separation.  Furthermore, Wife failed to present any evidence of additional maintenance expenses at trial.  The trial courts apportionment of the property and the debt incurred from the property was not an abuse of discretion.  
B.  Marital Assets Retained by Husband 
Wife contends the family court erred in failing to take into account the marital assets retained by Husband.  We disagree.  
At issue are two antique oil lamps and a 1991 Mercedes Benz that Husband obtained to replace the 1982 Mercedes Benz the parties purchased during the marriage.  Wife failed to prove, during trial, the value of any lamps.  The only mention of antique lamps came when Wife testified as to why there existed so much credit card debt and she replied, [w]e bought a lot of antiques.  We bought at least a dozen antique oil lamps and a dozen antique clocks.  On the other hand, the two automobiles were mentioned.  There was testimony that Wife kept one car owned by the couple while Husband kept the Mercedes Benz.  
Apportionment of the marital estate is within the sound discretion of the family court.  Brandi v. Brandi, 302 S.C. 353, 357, 396 S.E.2d 124, 126 (Ct. App. 1990).  There was no evidence presented at trial concerning the value of the lamps.  There was only a slight difference in the value of the two automobiles, which the family court considered.  We find no abuse of discretion and affirm the family courts determination on this matter. 
III. Value of 719 Caldwell Street 
Wife contends the family court erred in valuing 719 Caldwell Street at $52,135 where the preponderance of the evidence established the fair market value was $36,000.  We disagree.  
Husband testified the value of 719 Caldwell Street was $52,135, which was the value the parties listed on their Income Tax Returns in 2000.  Wife testified she sold the property to her son for $36,000.
The family court has broad discretion in adopting the value of property. Woodward v. Woodward, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987) (stating the family courts valuation of property will be affirmed if it is within the range of the evidence); Smith v. Smith, 294 S.C. 194, 198, 363 S.E.2d 404, 407 (Ct. App. 1987) (holding the family court may accept one partys valuation of marital property over that of the other party).  The family courts valuation was within the range of evidence presented at trial.  The family court found the sale between Wife and her son was not an arms length transaction and thus, determined the value based upon the evidence presented at trial.  We find no abuse of discretion and affirm the family courts finding that the correct value was $52,135. 
IV. Attorneys Fees and Costs 
Wife contends the family court erred in denying her request for an award of attorneys fees and costs.  We disagree.  
In determining whether attorneys fees should be awarded, the court should consider the following factors:  the partys ability to pay his/her own attorneys fees; beneficial results obtained by the attorney; the parties respective financial conditions; and the effect of the attorneys fee on each partys standard of living.  E.D.M. v. T.A.M, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).  In determining the reasonable amount of attorneys fees to award, the family court should consider the nature, extent and difficulty of the services rendered, the time necessarily devoted to the case, counsels professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).  
Wife asserts that because Husband failed to present his retirement accounts in their entirety during discovery, she should be awarded attorneys fees and costs.  The court denied this request and stated there are two things really that ran up the attorneys fees here.  One is his retirement, as you just mentioned, and the second is the argument over whether or not a portion of the house was transmuted.  
An award of attorneys fees and costs is a discretionary matter not to be overturned absent abuse by the trial court. Donahue v. Donahue, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989).  We have reviewed the family courts failure to award attorneys fees in light of the applicable factors and find no abuse of discretion.
Accordingly, the trial courts decision is 
AFFIRMED AS MODIFIED.[1]  
STILWELL, KITTREDGE, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.