691 S.E.2d 448

**James W. DICKERT, Appellant/Respondent,**

v.

**Carolyn H. DICKERT, Respondent/Appellant.**

**No. 26757.**

Supreme Court of South Carolina.

Heard Dec. 1, 2009.

Re-filed March 29, 2010.

2

David A. Wilson, of Horton, Drawdy, Ward & Jenkins, and Kenneth C. Porter, of Porter & Rosenfeld, both of Greenville, for Appellant/Respondent.

Timothy E. Madden and Megan G. Sandefur, both of Nelson Mullins Riley & Scarborough, of Greenville, for Respondent/Appellant.

Chief Justice TOAL.

This Court certified this case for review pursuant to Rule 204(b), SCACR.

### FACTS/PROCEDURAL HISTORY

This is an appeal from a family court order granting Respondent/Appellant Carolyn H. Dickert (Wife) a divorce from Appellant/Respondent James W. Dickert (Husband).[1]

---

1. Both parties are appealing issues derived from the Amended Final Order filed September 17, 2007.

4

Husband and Wife began dating when Wife was fourteen years old and Husband was sixteen years old. Wife skipped her senior year of high school to join Husband at Clemson University. Upon Husband's graduation from Clemson, the parties moved to Charleston so Husband could attend dental school at the Medical University of South Carolina (MUSC). Husband and Wife were married in 1974 when Husband was twenty-three and a student at MUSC, and wife was twenty-one and working as a teacher.

While Husband was attending dental school, Wife was the sole breadwinner through her job as a teacher. When Husband finished dental school, the parties moved to Greenville where Husband opened a dental practice and worked at the county health department. Wife continued to teach while Husband established his dental practice. Upon moving to Greenville, the parties lived in an apartment. They then moved into a new house, where they lived for three years.

Wife continued to work until the birth of their first child in 1981. After the birth of their first child, Wife became a stay-at-home mother and primary caretaker of the children, and Husband was the primary breadwinner. Wife has not worked outside the home since 1981. Wife's primary roles were to maintain the home, maintain household finances, and support Husband in his dental practice.

In 1984, Wife became pregnant with their second child, and the parties purchased a new house in Sugar Creek, an upper-middle-class subdivision in Greenville. The two sons grew up in this approximately 3,000 square foot home. While living in Sugar Creek, Husband's dental practice continued to grow and Wife continued as a stay-at-home mother. Husband was solely responsible for all of the income of the family while the parties shared child-rearing responsibilities. While living at Sugar Creek, Husband paid for a maid to assist Wife with some of the household chores. Wife continued to have a maid throughout the marriage. Throughout the marriage the parties engaged in social activities associated with the children's athletics and with their membership at Thornblade Country Club, including golf, tennis, and swimming.

In 2001, the parties decided to build their dream home in the Thornblade Country Club subdivision. The parties

worked together to design a 7,000 square foot home in the Thornblade community. The parties invested approximately $900,000 in the home and moved into the Thornblade residence in May 2002. Within three months of moving into the Thornblade residence, Husband became involved in an adulterous relationship with Sandy Brockman (Brockman). Husband met Brockman on a golf trip to Hilton Head. Husband continued to see Brockman and informed Wife of his adulterous relationship in July of 2003.[2] Husband informed Wife he was unhappy and wanted a divorce so he could pursue a relationship with Brockman. Husband left the marital home in August 2003 and never returned. Husband commenced this marital dissolution action on October 30, 2003.

Husband's income at the time of trial was approximately $360,000 per year. Wife remained unemployed. Instead of seeking employment, Wife spent a significant amount of time playing tennis at the Thornblade Country Club. The marital estate of the parties was valued at approximately $2,000,000. The trial court awarded Wife forty-five percent of the marital estate and Husband fifty-five percent. The trial court awarded permanent periodic alimony to Wife in the amount of $8,600 per month. The trial court also ordered Husband to pay $99,000 in attorney's fees and costs.

### ISSUES

I. Did the family court err by including the goodwill of Husband's dental practice in calculating the marital estate?

II. Did the family court err in apportioning forty-five percent of the marital estate to Wife?

III. Did the family court err in awarding Wife $8,600 per month in permanent periodic alimony?

IV. Did the family court err in awarding $99,000 to Wife in attorney's fees and litigation expenses?

### STANDARD OF REVIEW

In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of

---

**2.** Wife was granted an absolute divorce from Husband on the statutory ground of Husband's adultery.

the preponderance of the evidence. *Strickland v. Strickland,* 375 S.C. 76, 82, 650 S.E.2d 465, 469 (2007) (citation omitted). "This broad scope of review does not require the reviewing court to disregard the findings of the family court; appellate courts should be mindful that the family court, who saw and heard the witnesses, sits in a better position to evaluate credibility and assign comparative weight to the testimony." *Id.* (citation omitted).

## LAW/ANALYSIS

### I.   Goodwill Included in Marital Estate

■    Husband argues the family court erred in determining the value of his dental practice by including goodwill in the amount of $256,519 to arrive at a value of $360,000 subject to equitable distribution.  We agree.

This Court has defined "goodwill" in general:

Goodwill may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

*Donahue v. Donahue,* 299 S.C. 353, 359, 384 S.E.2d 741, 745 (1989) (quoting *Levy v. Levy,* 164 N.J.Super. 542, 549, 397 A.2d 374, 377 (1978)).  This Court has defined "professional goodwill" as having the following attributes:

It attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. (cite omitted) It does not possess value or constitute an asset separate and apart from the professional's person, or from his individual ability to practice his profession.  It would be extinguished in the event of the professional's death, retirement or disablement. (cite omitted)

*Id.* (quoting *Rathmell v. Morrison,* 732 S.W.2d 6, 17 (Tex.App. 1987)).

" 'The very nature of a professional practice is that it is totally dependent upon the professional.' " *Id.* at 360, 384 S.E.2d at 745 (quoting *Powell v. Powell,* 231 Kan. 456, 648 P.2d 218, 223 (1982)). "The definitions set forth above indicate the intangible nature of the goodwill asset . . . [and] [i]t is this intangibility which inevitably results in a speculative valuation." *Id.* This Court in *Donahue* held the family court erred in placing a value upon the goodwill of the husband's professional dental practice and attempting to equitably divide it. *Id.; see also Casey v. Casey,* 293 S.C. 503, 505, 362 S.E.2d 6, 7 (1987) (holding that goodwill in Husband's fireworks business does not constitute marital property subject to equitable distribution); *Keane v. Lowcountry Pediatrics,* 372 S.C. 136, 146, 641 S.E.2d 53, 59 (Ct.App.2007) (holding that professional goodwill has no value that exists separate and apart from the professional).

In this case, the family court assigned the value of $360,000 to Husband's dental practice for purposes of equitable apportionment. In arriving at this number the family court included $256,517 in what it termed "enterprise goodwill." Wife wants this Court to follow other jurisdictions that subject "enterprise goodwill" to equitable apportionment. However, because of the intangible nature of the goodwill asset, "enterprise goodwill" in a professional practice is not subject to equitable distribution. Thus, the family court erred in including this "enterprise goodwill" in the amount of $256,517 in marital property to be equitably apportioned.

## II. Equitable Distribution

■ The family court awarded fifty-five percent of the marital estate to Husband and forty-five percent of the marital estate to Wife. Because we reverse the family court's decision on "enterprise goodwill," we reverse and remand the family court's decision regarding equitable distribution. This will allow the family court to determine if a change in the marital apportionment should be made in light of the goodwill valuation change. This issue is to be tried on the record as it exists now. No more evidence is to be taken on remand to the family court.

### III. Alimony

■ Husband argues the trial court abused its discretion in awarding $8,600 per month in permanent periodic alimony to Wife. We agree.

■ "An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion." *Allen v. Allen*, 347 S.C. 177, 183–84, 554 S.E.2d 421, 424 (Ct.App.2001) (citation omitted). Alimony is a substitute for the support that is normally incident to the marital relationship. *Spence v. Spence*, 260 S.C. 526, 529, 197 S.E.2d 683, 684 (1973). "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Allen*, 347 S.C. at 184, 554 S.E.2d at 424 (citation omitted). "It is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Id.* (citation omitted). "Alimony should not dissuade a spouse, to the extent possible, from becoming self-supporting." *Rimer v. Rimer*, 361 S.C. 521, 525, 605 S.E.2d 572, 574 (Ct.App.2004) (citation omitted). Section 20–3–130(C) lists the factors the family court judge must consider in deciding whether to award alimony or separate maintenance and support.[3] *Hatfield v.*

---

3.  S.C.Code Ann. § 20-3-130(C) (Supp.2008) states:

    (C) In making an award of alimony or separate maintenance and support, the court must consider and give weight in such proportion as it finds appropriate to all of the following factors:
    (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce or separate maintenance action between the parties;
    (2) the physical and emotional condition of each spouse;
    (3) the educational background of each spouse, together with need of each spouse for additional training or education in order to achieve that spouse's income potential;
    (4) the employment history and earning potential of each spouse;
    (5) the standard of living established during the marriage;
    (6) the current and reasonably anticipated earnings of both spouses;
    (7) the current and reasonably anticipated expenses and needs of both spouses;
    (8) the marital and nonmarital properties of the parties, including those apportioned to him or her in the divorce or separate maintenance action;
    (9) custody of the children, particularly where conditions or circumstances render it appropriate that the custodian not be required to

*Hatfield,* 327 S.C. 360, 364, 489 S.E.2d 212, 215 (Ct.App.1997). No one factor is dispositive. *Allen,* 347 S.C. at 184, 554 S.E.2d at 425 (citation omitted).

Husband concedes the family court considered all of the factors, but contends it abused its discretion in analyzing the factors. Husband's main contention is that the award of $8,600 a month allows wife to enjoy a standard of living better than the marital standard. Husband points to several factors to show that during the majority of the marriage the couple did not live an extravagant lifestyle: for approximately twenty years of marriage the couple lived in the Sugar Creek subdivision; they did not move into Thornblade until May 2002; they did not drive luxury automobiles; and the wife even admitted that the standard of living she enjoyed in the Thornblade house was not the standard of living she enjoyed during the course of marriage.

Husband's expert determined that Wife would need $4,669 per month to enjoy the standard of living obtained during the marriage without imputed earnings. The court imputed earnings of $1,167 per month to Wife leaving her alimony need at $3,502 per month according to Husband. Wife contends the family court did not award her enough alimony. She argues she deserves $10,290 per month to maintain the marital standard of living. The family court found Husband's expert to be generally correct in his analysis of Wife's alimony needs. The

---

seek employment outside the home, or where the employment must be of a limited nature;

(10) marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce or separate maintenance decree if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage, except that no evidence of personal conduct which may otherwise be relevant and material for the purpose of this subsection may be considered with regard to this subsection if the conduct took place subsequent to the happening of the earliest of (a) the formal signing of a written property or marital settlement agreement or (b) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties;

(11) the tax consequences to each party as a result of the particular form of support awarded;

(12) the existence and extent of any support obligation from a prior marriage or for any other reason of either party; and

(13) such other factors the court considers relevant.

family court also noted Wife's expert calculated her needs based on her expenditures for only 2002 and 2003. Because the family court found Husband's expert was generally correct concerning Wife's alimony needs and Wife's expert only considered two years in determining alimony, we find an award of $8,600 per month of permanent periodic alimony was an abuse of discretion. Moreover, we hold that an award of $7,000 per month in permanent periodic alimony will place Wife, as nearly as practical, in the same position she enjoyed during the marriage.

## IV. Attorney's Fees

Husband argues the family court erred in awarding $99,000 in attorney's fees to Wife. We disagree.

The family court may order one party to pay a reasonable amount to the other party for attorney's fees and costs incurred in maintaining an action for divorce pursuant to S.C.Code Ann. § 20–3–130(H) (Supp.2008). Whether to award attorney's fees is a matter within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Bakala v. Bakala*, 352 S.C. 612, 633–34, 576 S.E.2d 156, 167 (2003). In determining whether to award attorney's fees, the following factors should be considered: (1) the party's ability to pay his or her own attorney's fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). When the family court finds an attorney's fee is justified, the amount of the fee should be determined by considering: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

The family court addressed the four factors used to determine whether an award of attorney's fees is appropriate and correctly determined an award of attorney's fees was appropriate. The family court also addressed the six *Glasscock*

factors in awarding attorney's fees. We hold that the family court did not abuse its discretion in awarding $99,000 in attorney's fees to Wife in a case presenting complex issues that required a great deal of time and energy to assess.

### CONCLUSION

First, the family court erred by including the $256,517 in "enterprise goodwill" in the amount to be equitably apportioned. Second, because we reverse the family court's decision on "enterprise goodwill," we reverse and remand the family court's decision regarding equitable distribution. Third, we reverse the family court's alimony award and find that $7,000 per month in permanent periodic alimony will place Wife, as nearly as practical, in the same position she enjoyed during the marriage. Lastly, we affirm the family court's decision to award Wife $99,000 in attorney's fees.

WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.