# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Josie M. Bostick, Respondent,

v.

Earl A. Bostick Sr., Petitioner.

Appellate Case No. 2022-000894

––––––––––

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

––––––––––

Appeal from Beaufort County
Michèle Patrão Forsythe, Family Court Judge

––––––––––

Opinion No. 28226
Heard May 21, 2024 – Filed July 31, 2024

––––––––––

## REVERSED

––––––––––

J. Michael Taylor, of Taylor/Potterfield, of Columbia;
and H. Grady Brown III, of Brown & Norton, LLC, and
Bridget Hillebrand Norton, both of Beaufort, all for
Petitioner.

John Ryd Bush Long, of John R. B. Long, PC, of
Augusta, GA, for Respondent.

––––––––––

**JUSTICE KITTREDGE:** In this domestic relations appeal, we examine whether
the goodwill in a particular dental practice constitutes personal or enterprise

goodwill. We reverse the court of appeals' decision and reinstate the family court's decision, for the goodwill in the dental practice in this case bears all the hallmarks of personal goodwill (nonmarital property), and no evidence was presented to the family court upon which it could have concluded the goodwill was enterprise goodwill (marital property).

# I.

Dr. Earl Bostick Sr. (Husband) and Josie Bostick (Wife) married in 1970. Soon after, Husband became a dentist and opened his own practice. Over the course of his career, Husband developed two prosperous dental practices in South Carolina: Sea Island Dentistry in Beaufort and Earl Bostick Sr., D.M.D. and Associates, P.A. in Ridgeland.

In 2009, due to various health concerns, Husband downsized his workload by selling the Sea Island practice to another dentist, the proceeds from which he received in installment payments. Husband maintained the Ridgeland practice at that point and continued to work.

After about forty-five years of marriage, the parties separated, and Wife filed for divorce in 2017. Prior to trial, Husband sold the Ridgeland practice for a total sales price of $569,000. According to the sales contract, the lion's share of the total sales price—$424,140—was paid in exchange for the goodwill in the practice and a restrictive covenant not to compete,[1] with the remaining portion of the sales price securing the practice's hard assets.

At trial, the parties stipulated to an equal division of the marital estate. They further stipulated that the value of the Ridgeland practice was $569,000—the total sales price represented in the sales contract.[2] However, Husband and Wife contested

---

[1] Specifically, the restrictive covenant precluded Husband's ability to "[s]olicit business . . . or attempt to convert to other providers of the same or similar services as provided by Buyer, any customer, client or account Buyer or with which Bostick has had any contact during the term of ownership of Seller." Husband also agreed he would not engage in or be financially interested in any business or group (competitor or customer) similar to or in competition with the buyer within a fifteen-mile radius.

[2] Although that stipulation did not contain a breakdown of the total sales price, Wife

whether the goodwill in the Ridgeland practice was personal goodwill (nonmarital property) or enterprise goodwill (marital property), and, therefore, whether the value of that goodwill was subject to equitable division.[3]

Following trial, the family court granted Wife a divorce on the ground of one year's continuous separation. Relevant to this appeal, the family court concluded the goodwill component of the total sales price of the Ridgeland practice was a nonmarital asset, finding it was paid in exchange for personal goodwill attributable to Husband's professional status pursuant to our decision in *Moore v. Moore*, 414 S.C. 490, 779 S.E.2d 533 (2015).

Wife appealed to the court of appeals, which reversed the family court's goodwill determination. *Bostick v. Bostick*, 436 S.C. 434, 872 S.E.2d 859 (Ct. App. 2022). Subsequently, we granted Husband a writ of certiorari to review the court of appeals' decision.

## II.

In appeals from the family court, this Court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011) (citations omitted). Thus, we have jurisdiction to find facts in accordance with our own view of the preponderance of the evidence. *Moore*, 414 S.C. at 497, 779 S.E.2d at 536. This broad scope of review, however, does not require us to disregard the findings of the family court, which is in a superior position to make credibility determinations. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651–52 (2011).

## III.

### A.

In divorce proceedings, the family court must identify, value, and apportion the marital estate. *Gardner v. Gardner*, 368 S.C. 134, 136, 628 S.E.2d 37, 38 (2006) (citation omitted). Once the family court identifies goodwill in a spouse's business

---

did not offer any evidence to dispute the value of the goodwill in the Ridgeland practice being the amount reflected in the sales contract.

[3] The parties agreed to treat the remaining proceeds from the Sea Island sale as marital property.

as an asset, the question then becomes whether and to what extent such goodwill should be considered a marital asset subject to equitable division. *Moore*, 414 S.C. at 509, 779 S.E.2d at 543. Answering that question requires a fact-based classification of the goodwill as personal or enterprise in nature, for enterprise goodwill is a marital asset subject to equitable division, while personal goodwill is a nonmarital asset excluded from equitable division. *Id.* at 512, 779 S.E.2d at 544.

Generally, enterprise goodwill is that which exists independently of one's personal efforts and will survive one's involvement with the business. *Id.* at 509–10, 799 S.E.2d at 543 ("[E]nterprise goodwill attaches to a business entity and is associated separately from the reputation of the owners . . . ." (citation omitted)).

In contrast, personal goodwill is associated with individuals: it is that part of increased earning capacity that results from the reputation, knowledge and skills of individual people. *Id.* at 510, 799 S.E.2d at 543 (citation omitted). For that reason, "the goodwill of a service business, *such as a professional practice [such as dentistry]*, consists largely of personal goodwill." *Id.* (emphasis added) (citation omitted); *see Donahue v. Donahue*, 299 S.C. 353, 360, 384 S.E.2d 741, 745 (1989) (reversing family court's division of the goodwill of husband's dental practice because "[t]he very nature of a professional practice is that it is totally dependent upon the professional" (citation omitted)); *Dickert v. Dickert*, 387 S.C. 1, 7, 691 S.E.2d 448, 451 (2010) (rejecting a claim that the goodwill in the dental practice was enterprise goodwill and, thus, finding the goodwill was properly excluded from the marital estate). The personal characteristics of the owner are also important to ascertaining personal goodwill, including the owner's personal reputation, community visibility, age and health, and work habits, as well as the owner's education, experience in the industry, judgment, ability, and special skills or talents. *Moore*, 414 S.C. at 514, 799 S.E.2d at 545 (citation omitted).

## B.

As an initial matter, we emphasize that Wife did not present *any* evidence to the family court upon which it could have possibly determined the goodwill component of Husband's dental practice was enterprise goodwill.[4] *See id.* at 513, 779 S.E.2d at

---

[4] To be clear, we do not fault Wife's attorney for the failure to present evidence in this regard, for it appears he was retained less than a week before trial and was merely the last in a string of family court attorneys retained by Wife in this matter.

545 ("The spouse claiming that goodwill should be included in the marital estate bears the burden of proving the goodwill at issue is enterprise goodwill and, thus, is properly considered marital property." (citations omitted)). In the absence of contrary evidence, we are left solely with the evidence presented by Husband regarding the nature of the goodwill in the Ridgeland practice.

In particular, Husband submitted evidence demonstrating he established and solely owned the Ridgeland practice—which bore only his name—for decades prior to its sale. After opening his practice, Husband devoted considerable time to immersing himself in the community with an aim at promoting his business and shaping his reputation as a dentist.[5] For example, Husband joined the Rotary Club and the Chamber of Commerce, attending a number of events for both organizations. Moreover, Husband created marketing materials—which included his name and photograph—and advertised his practice in church brochures, on the radio, and on television. He also printed promotional booklets and calendars to disseminate in the community. Finally, Husband nurtured his established patient-base by periodically contacting his patients individually by, for example, sending Christmas cards. These efforts, among many others, were successful in building and maintaining a thriving dental practice with loyal patients. All of this evidence compellingly points to the goodwill being personal to Husband.

Of additional significance is the presence of Husband's covenant not to compete, which the purchaser required in the sale of the Ridgeland practice. *See id.* at 515, 779 S.E.2d at 546 ("While a covenant not to compete may be present in any transaction, the market-driven necessity for a covenant is manifest *where personal goodwill is involved*." (emphasis added)). Husband's impending retirement does not diminish the importance of the covenant not to compete in the goodwill analysis, or render it a "hollow promise," as erroneously found by the court of appeals. The dental practice's success and reputation existed solely because of Husband's professional skill and broad, community-focused outreach. That being the case, any prudent purchaser of the business would insist on a covenant not to compete— Husband's age and health notwithstanding—to close the door on any possibility of

---

[5] Given the nature of dentistry—a service-based profession—the Ridgeland dental practice's continued patronage largely depended on the Husband's personal relationships with his patients. *See Donahue*, 299 S.C. at 360, 384 S.E.2d at 745 ("[T]he very nature of a professional practice is that it is totally dependent upon the professional."); *Dickert*, 387 S.C. at 7, 691 S.E.2d at 451 (same).

Husband's association with or endorsement of a competitor.

These undisputed facts clearly establish the goodwill in the Ridgeland practice was personal: Husband's name, reputation, and visibility in the community were critical to the success of the Ridgeland practice prior to its sale, the continuity of which the purchaser ensured by requiring Husband to enter a restrictive covenant not to compete.[6] The facts of this case fit neatly—and unequivocally—within the personal goodwill template set forth more extensively in *Moore*. Accordingly, we hold the family court properly excluded the value of the goodwill from the sale of the Ridgeland practice from the marital estate.

## C.

Significantly, like the family court, the court of appeals found the goodwill associated with the Ridgeland practice was personal in nature, finding "it closely follows the factors set out in *Moore*." However, the court of appeals reached a different result, casting *Moore* aside on the incorrect basis that it was limited to "ongoing" businesses. While the facts of *Moore* involved a business in which one spouse would remain as the sole owner of the business following the parties' divorce, nowhere in our decision did we suggest the classification of goodwill hinged upon whether one of the spouses would remain in the business. We reject the notion that personal goodwill is present only when one spouse remains in the business. We view the *Moore* situation, involving an "ongoing" business, as an outlier, for the typical situation is that which was presented here: one or both of the spouses' business is sold to a third party, and neither spouse remains in the business following their divorce. This reality reaffirms the importance of a covenant not to compete in determining the nature of the goodwill.[7]

---

[6] Once again, Wife presented no evidence to establish the goodwill associated with the Ridgeland practice was enterprise goodwill, nor did she refute Husband's evidence demonstrating the goodwill was personal. On the contrary, Wife admitted that patients were drawn to the practice because of Husband's efforts in the community. She further testified that she marketed Husband's dental skills personally, telling potential patients he was a "painless dentist."

[7] As a final note, we further reject the suggestion that the parties' treatment of proceeds from the Sea Island sale—occurring roughly nine years before the parties' divorce—has any impact on the analysis of the goodwill in the Ridgeland practice

## IV.

In conclusion, Wife failed to meet her burden of proving the goodwill associated with the Ridgeland practice constituted marital property, leaving only the uncontradicted evidence establishing that that goodwill at issue here was personal in nature. Therefore, we hold the value of the personal goodwill in the dental practice was properly excluded from the equitable division of the marital estate. For those reasons, we reverse the court of appeals' decision and reinstate the judgment of the family court.[8]

**REVERSED.**

**BEATTY, C.J., FEW, JAMES, JJ., and Acting Justice Jan Benature Bromell Holmes, concur.**

---

or otherwise forecloses Husband's ability to argue that goodwill is personal, nonmarital property. As then-Judge Hill noted in dissent, "The parties may have had many reasons to treat the sales differently."

[8] Our decision moots the anticipated remand from the court of appeals on the alimony and attorney's fees issues, which the court ordered based upon the change in the equitable distribution flowing from its erroneous decision regarding the goodwill in Husband's dental practice.