721 S.E.2d 1

**Patricia Carson LEWIN, Respondent,**

v.

**Albert Read LEWIN, Appellant.**

**No. 4918.**

Court of Appeals of South Carolina.

Heard Oct. 6, 2011.

Decided Dec. 14, 2011.

Rehearing Denied Jan. 30, 2012.

350

Gregory Samuel Forman, of Charleston, for Appellant.

Blake A. Hewitt and John Nichols, of Columbia, for Respondent.

LOCKEMY, J.

In this domestic action, Albert Lewin (Father) appeals the family court's award of attorney's fees and costs to Patricia Lewin (Mother). Father argues the family court erred in (1) finding Mother was the prevailing party, (2) finding Father's uncooperative conduct contributed to litigation costs, (3) considering the conduct of Father's wife, (4) determining Father's ability to pay, (5) failing to consider Mother's assets, and (6) determining the amount of attorney's fees awarded to Mother. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Father and Mother were married in February 1993 and divorced in August 2000. At the time of their divorce, the parties' two children were seven and four years old. Pursuant to custody stipulations attached to the final order and decree of divorce, the parties agreed to joint legal custody of the children. The parties also agreed Mother would maintain primary physical custody of the children and Father would have visitation rights.

According to Mother, for a "considerable period of time" prior to initiating this action, she received reports from one of the children that marijuana was present in Father's home during visitation. Mother maintains the child reported Father and Father's wife (Wife) smelled of marijuana, were "wobbling" or "stumbling," and had slurred speech. According to Mother, she also received pictures taken by one of the children of marijuana in Father's home.

On February 26, 2008, Mother filed a complaint alleging Father and Wife abused illegal drugs and alcohol while the parties' children, then ages fourteen and twelve, were in Father's home for visitation. In her complaint, Mother re-

quested (1) supervised visitation, (2) full legal and physical custody, (3) the appointment of a guardian ad litem, (4) attorney's fees and costs, and (5) discovery. Mother also filed a motion for temporary relief, requesting Father and Wife undergo alcohol abuse counseling and hair follicle drug testing. Prior to the commencement of a March 13, 2008 temporary hearing, Father and Mother reached an agreement as to several issues. In an April 29, 2008 temporary order, the family court found Father and Mother agreed (1) to submit themselves and their children to hair strand testing for illegal drugs, (2) to a cessation of the children's overnight visitation with Father until he obtained a negative drug test, and (3) that Wife was not permitted to be present during any visitation unless she provided a negative drug test.

Mother, Father, Wife, and the children were drug tested on March 17, 2008. Mother and the children tested negative for illegal drugs. Father also tested negative; however, the lab report stated Father had recently bleached his hair which could have negatively impacted the results of the hair strand test.[1] Between March and May 2008, Mother made several requests for Father to provide the test results from the secondary body hair samples taken during Father's drug test.[2] On May 15, 2008, Father produced an affidavit from Dr. Robert Bennett, the forensic toxicologist who performed the drug tests. Mother learned from Dr. Bennett's affidavit that Father was also drug tested on March 7, 2008, and tested positive for cocaine. Dr. Bennett's affidavit further revealed Father's secondary body hair sample collected during the March 17, 2008 test was positive for cocaine and marijuana. According to Dr. Bennett, Father is not "in a state of drug dependency, regular drug usage, or addiction" and the drugs detected "could be due to passive exposure." Dr. Bennett performed another drug test on Father on May 9, 2008. The test was negative.

Between June 2008 and March 2009, Mother's counsel attempted to arrange mediation between the parties, but Father failed to respond.[3] On March 27, 2009, Mother filed a motion

---

1. Wife withdrew her consent to release her test results.

2. Father changed counsel during this time.

3. Father changed counsel again in March 2009.

to compel mediation. In May 2009, the family court granted Mother's motion. Although the parties were unable to resolve their dispute through mediation, they informed the family court in October 2009 that they had reached an agreement as to all issues except attorney's fees. On November 16, 2009, the parties' agreement was approved by the family court. The parties agreed Mother would continue to maintain primary physical custody of the children, while Father and Mother would maintain joint legal custody of the children. Additionally, Father agreed to undergo quarterly drug testing and not expose the children to Wife.

Mother pursued her request for attorney's fees and costs by filing a brief with the family court. In December 2009, after reviewing the parties' briefs, affidavits, and financial declarations, the family court ordered Father to pay Mother $15,000 in attorney's fees and $3,955 in costs.[4] The family court found Father's conduct with regard to the drug testing results and his failure to respond to Mother's attempts to discuss settlement caused Mother to incur additional attorney's fees. The family court also determined Mother received beneficial results from her counsel and was the prevailing party, and found Father's financial declaration was not credible. Father filed a motion to alter or amend the order and requested the family court hear additional testimony. The family court denied Father's motion. This appeal followed.

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis,* 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). In appeals from the family court, the appellate court reviews factual and legal issues de novo. *Simmons v. Simmons,* 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "De novo review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the trial court's findings." *Lewis,* 392 S.C. at 390, 709 S.E.2d at 654–55. However, this broad standard of review does not require the appellate court to

---

4. In support of her request for attorney's fees, Mother submitted an affidavit from her attorney showing she incurred $23,529.85 in attorney's fees and costs. Mother also alleged she incurred an additional $3,955 in costs for a total of $27,484.85 in attorney's fees and costs.

disregard the factual findings of the trial court or ignore the fact that the trial court is in the better position to assess the credibility of the witnesses. *Pinckney v. Warren,* 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001). Moreover, the appellant is not relieved of the burden of demonstrating error in the trial court's findings of fact. *Id.* at 387–88, 544 S.E.2d at 623. Accordingly, we will affirm the decision of the trial court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by this court. *See Lewis,* 392 S.C. at 390, 709 S.E.2d at 654–55.

## ISSUE ON APPEAL

1. Did the family court err in awarding Mother $18,955 in attorney's fees and costs?

## LAW/ANALYSIS

### I. Mother as Prevailing Party

■ Father argues the family court erred in finding Mother was the prevailing party. We disagree.

■ In deciding whether to award attorney's fees and costs, the family court should consider "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). Father contends Mother obtained very little of the relief she sought in her complaint, and therefore, she is not entitled to attorney's fees. We disagree. Mother filed her complaint based on her concerns about drug use in Father's home. Although Mother did not receive all of the relief she requested, she did prevail on several issues and obtained beneficial results. The family court temporarily suspended Father's visitation rights until he provided Mother with a negative drug test. Furthermore, in its final order, the family court ordered Father to undergo quarterly drug testing, and determined Father's visitation rights would be suspended should he fail any of the drug tests. The family court

also approved the appointment of a guardian ad litem and restrained Father from exposing the children to Wife. Accordingly, we do not believe the family court erred in finding Mother obtained beneficial results and was the prevailing party.

## II. Father's Conduct

■ Father argues the family court erred in finding his uncooperative conduct contributed to litigation costs. We disagree.

"This court has previously held when parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees." *Bodkin v. Bodkin*, 388 S.C. 203, 223, 694 S.E.2d 230, 241 (Ct.App.2010); *see also Spreeuw v. Barker*, 385 S.C. 45, 73, 682 S.E.2d 843, 857 (Ct.App.2009) (holding a party's uncooperative conduct in litigation is a proper factor for the family court to consider in deciding whether to award attorney's fees); *Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989) (holding husband's lack of cooperation served as an additional basis for the award of attorney's fees); *Anderson v. Tolbert*, 322 S.C. 543, 549–50, 473 S.E.2d 456, 459 (Ct.App.1996) (noting an uncooperative party who does much to prolong and hamper a final resolution of the issues in a domestic case should not be rewarded for such conduct).

The family court determined Father's actions with regard to his drug testing results, his failure to timely respond in any manner to Mother's requests for accurate test results, and Mother's numerous unanswered attempts to discuss settlement or mediation caused Mother to incur additional attorney's fees and costs. The family court noted Mother's attorney spent "considerable time making continual demands" for Father to provide his drug test results, and engaged in a long series of communications with Father's attorney asking for mediation. Father contends the family court "mischaracterized [his] behavior" and only considered facts favorable to Mother.

First, Father argues the family court erred in finding he did not reveal the results of his March 7, 2008 drug test to Mother

at the March 13, 2008 temporary hearing.[5]   According to Father, the results of the March 7, 2008 test were not known at the time of the temporary hearing and the "punitive tone" of the family court's finding indicates the court wanted to punish Father.   We note that although Father contends the test results were not known at the time of the temporary hearing, Father did not inform Mother of the test results until Dr. Bennett's affidavit was provided two months after the test.

Father also argues the family court failed to consider all of the facts regarding Dr. Bennett's conclusion that Father's hair bleaching could negatively affect his drug test results.   Father contends he has bleached his hair for years for "cosmetic purposes," and he provided secondary body hair samples during the test to resolve the issue.   We note the record contains no evidence Father regularly bleached his hair.   Furthermore, Father delayed turning over the secondary body hair test results for two months, thus causing Mother to incur additional attorney's fees.

Next, Father argues the family court erred in failing to find Dr. Bennett's report stated Father's positive drug test could have been the result of passive exposure.   While this conclusion was noted in Dr. Bennett's report, we find the family court did not err in not including it in its findings of fact. Father's hair sample was positive for cocaine and marijuana. Dr. Bennett stated in his affidavit that a positive drug test infers usage and that a drug test cannot distinguish between active or passive consumption.

Finally, Father argues the family court's finding that he failed to respond in a timely manner to Mother's requests for accurate test results was inconsistent with the facts in evidence.   Father contends he complied with the temporary order and obtained drug tests from November 2008 to January 2009 and in July 2009.   However, Father failed to respond to Mother's repeated requests from March 2008 to May 2008 to provide the results of his secondary body hair samples collected on March 17, 2008.   Accordingly, we find the family

---

5. The family court refers to this test as the March 11, 2008 test, however the test was conducted on March 7, 2008, and the report was compiled on March 11, 2008.

court did not err in finding Father's conduct caused Mother to incur additional attorney's fees.

### III. Wife

Father argues the family court erred in considering Wife's conduct in awarding attorney's fees to Mother. Based on our review of the family court's order, we find the family court did not consider Wife's conduct. The family court references Wife three times in its order. First, the family court notes the temporary order provided Father was prohibited from exposing the children to Wife until she obtained a negative drug test. Second, the family court notes Wife withdrew her consent to release her drug test results. Third, the family court notes the final order provided Father would not expose the children to Wife. The family court does not discuss Wife in the context of any of the factors relative to attorney's fees.

### IV. Father's Ability to Pay and Mother's Assets

■ Father argues the family court erred in determining his ability to pay attorney's fees. We disagree.

In his financial declaration, Father reported his occupation as "doctor" and his employer as Varnville ENT. Father also reported total monthly expenses of $8,184.50, $2,341 in monthly loan payments, approximately $99,000 in debts, and a gross monthly income of $400. Father's assets include $2,000 in a checking account and a retirement account valued at $65,000. The family court noted Father's income was below minimum wage and found that a salary of $400 per month for a practicing physician was not credible. The court also noted Father's financial declaration was not supported by an affidavit or other verification. Because Father's financial declaration lacked credibility, the family court held it could not "determine the applicable factors regarding [Father's] ability to pay attorney fees and the effect of the payment of attorney fees on his standard of living as required by [*E.D.M.* ]." The family court found it would be "inequitable to allow [Father] to benefit" from a financial declaration which lacked credibility, and found "those issues adverse to [Father]." Later in its order, the family court stated it had "considered the respective financial conditions of each party, their abilities to pay,

and the effect of the attorney fees on each of the parties' standard of living." The court further held that, subject to its findings above, Father's "standard of living will not be adversely affected by the attorney fees and costs awarded in this case."

Father argues his financial declaration was signed under oath and his relatively low income does not make his financial declaration incredulous. Father also argues the family court failed to consider the *E.D.M.* factors. First, because we defer to the family court on issues of witness credibility, we find no reversible error in the family court's determination that Father's financial declaration was not credible. *See Avery v. Avery*, 370 S.C. 304, 315, 634 S.E.2d 668, 674 (Ct.App.2006) (deferring to the family court when the issue was one of witness credibility). We note Father failed to explain how he can meet $8,184.50 in monthly expenses while only earning $400 per month. Additionally, we find the family court properly considered the *E.D.M.* factors. In determining Father's ability to pay, the family court found the only evidence of Father's financial situation, his financial declaration, was not credible. Because Father failed to offer any accurate evidence of his income, we find the family court did not err in finding he had the ability to pay Mother's attorney's fees. *See Spreeuw*, 385 S.C. at 67, 682 S.E.2d at 854 (holding Father's refusal to provide the family court with a meaningful representation of his current income precluded him from complaining of the family court's ruling on appeal); *id.* (finding that "even if the family court erred in determining Father's gross income, such error was caused by Father's failure to provide the court with accurate financial information").

Father also argues the family court failed to consider Mother's ability to pay her attorney's fees out of her own assets. Because Father failed to raise this argument to the family court, we find it is not preserved for our review. *See King v. King*, 384 S.C. 134, 142, 681 S.E.2d 609, 614 (Ct.App.2009) (holding issues must be raised to and ruled upon by the family court to be preserved for appellate review).

## V. Amount of Attorney's Fees

■ Father contends the family court erred in determining the amount of attorney's fees awarded to Mother. We disagree.

■ In determining a reasonable attorney's fee the family court should consider "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). Father argues the family court erred in failing to properly consider the time devoted to the case and the customary fees charged for similar services. Father contends: no substantial discovery was conducted; no depositions were taken; there was no trial on the merits; and contempt proceedings were not required to force his compliance.[6] Mother argues the amount of attorney's fees awarded by the family court was proper considering Father's uncooperative conduct.

After the family court determined an attorney fee award was appropriate, the court noted the *Glasscock* factors and thoroughly detailed its calculation of attorney's fees. The court found the case was "vigorously contested," lasted more than eighteen months, and the number of hours expended by Mother's counsel and the expenses incurred were reasonable in relation to the issues before the court. The court also considered the experience and professional standing of Mother's counsel and determined her hourly rate was customary and reasonable. Finally, the court considered the beneficial results obtained by Mother and ordered Father to pay $18,955 of the $27,085 in attorney's fees and costs incurred by Mother.

We find the family court considered all of the appropriate factors in awarding Mother attorney's fees. Furthermore, evidence in the record supports each of the family court's findings. This case began over three years ago and was delayed by Father's failure to timely respond to Mother's requests for tests results and mediation. Mother also ob-

---

6. Father also argues Mother contributed to the increased litigation costs by "walk[ing] out" of mediation. We note Father failed to offer any evidence to support this argument, and he did not raise it until his brief in support of his motion to alter or amend the family court's final order on attorney's fees. Accordingly, we do not address this argument. *See Hickman v. Hickman*, 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct.App.1990) ("A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not.").

tained beneficial test results, and Father admitted Mother's counsel was a respected member of the South Carolina Bar who charges a reasonable hourly fee. Because the evidence in the record supports the family court's findings as to attorney's fees, we find the court did not err in awarding attorney's fees and calculating the amount.

## CONCLUSION

Based on the foregoing, the family court's decision is **AFFIRMED.**

HUFF and PIEPER, JJ., concur.