# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Carolyn Diane Dendy and William Leroy Dendy,
Respondents,

v.

Ajia Latrice Gamble, Alexia Gamble, and John Rice,
Defendants,

Of whom Ajia Latrice Gamble and John Rice are the
Appellants.

Appellate Case No. 2023-001358

———————

Appeal From Richland County
Joseph C. Smithdeal, Family Court Judge

———————

Opinion No. 6100
Heard December 2, 2024 – Filed February 12, 2025

———————

**REVERSED**

———————

Scarlet Bell Moore, of Greenville, for Appellants.

Melinda Inman Butler, of The Butler Law Firm, of Union,
and Elizabeth Dyal Medlin, of Medlin Law Firm, LLC, of
Laurens, for Respondents.

———————

**GEATHERS, J.:** Appellants Ajia Gamble (Aunt) and John Rice (Uncle) appeal the
family court's grant of visitation to Respondents Carolyn Dendy (Grandmother) and
William Dendy (Grandfather) (collectively, Grandparents). Aunt and Uncle argue
the family court erred in finding that Grandparents were entitled to court-ordered
visitation as de facto custodians and psychological parents of a minor child (B.G.).

They further argue the court erred by finding the "grandparent visitation" statute[1] warranted an award of visitation, and they claim the court erred by awarding attorney's fees to Grandparents. We reverse.

## FACTS

This case involves a dispute between a minor child's grandparents and her legal custodians regarding visitation. B.G. was born in 2010 in Louisiana. The child's mother, Alexia Gamble (Mother), was somewhat estranged from her own mother and stepfather, Grandparents, when B.G. was born. But after learning from other family members that Mother had a baby, Grandmother traveled to Louisiana to help. Grandmother brought B.G. back to South Carolina in accordance with a safety plan drafted by social services in Louisiana. The safety plan's drafters intended for Grandparents to obtain legal custody of B.G., though Grandparents never sought legal custody.

B.G. lived with Grandparents until she was around five years old. While Mother was often around and lived with Grandparents sporadically, Grandparents provided B.G.'s daily care.

In the summer of 2015, B.G. began living with Mother's sister—Aunt—and Aunt's then-boyfriend, Uncle. Grandparents claim this arrangement arose because Aunt offered to help when Grandparents began taking care of Grandmother's own aging mother. They allege the arrangement was always meant to be temporary. Aunt, on the other hand, claims she took B.G. at Mother's request due to fighting between Grandmother and Mother. Regardless, beginning in 2015, Aunt and Uncle became B.G.'s caregivers.

A little over a year later, in 2016, Aunt and Uncle filed for legal custody of B.G. The family court granted them permanent legal and physical custody on June 16, 2017, pursuant to the terms of a 2016 custody agreement between them and Mother. Mother did not attend the hearing in 2017, but she was served with notice of the hearing and expressly consented to the custody agreement. Grandparents claim they had no knowledge of the custody agreement or the 2017 order and that they were unaware that Aunt and Uncle had permanent legal custody of B.G. until Grandparents filed the present action. Aunt testified that she informed Grandparents of the custody agreement and that Grandparents were aware of it because Mother was living with Grandparents at the time Mother was served with notice of the

---

[1] S.C. Code Ann. § 63-3-530(A)(33) (Supp. 2024).

hearing. Further, Aunt claimed she explained to Grandmother that she needed to be B.G.'s guardian to enroll B.G. in school and that Grandmother sent documents, such as an immunization record, to help with this process. Grandmother testified she did not understand that Aunt would be obtaining permanent legal custody and always believed the guardianship arrangement was temporary.

From the time that B.G. first moved in with Aunt and Uncle until 2019, Grandparents visited regularly. But in 2019, a heated disagreement arose between Aunt and Grandmother about B.G.'s haircut. After this point, Grandparents claim Aunt and Uncle cut them out of B.G.'s life completely. They had no way to reach Aunt and Uncle, nor did they know where Aunt and Uncle were living. Aunt and Uncle contend that after this falling out, Grandparents stopped asking to visit or attempting to keep in touch with B.G.

In 2020, after not seeing or hearing from B.G. for over a year, Grandparents asked law enforcement to track down Aunt and Uncle, which led to the filing of this suit.[2] Grandparents sought custody of B.G. or, in the alternative, visitation.

Following significant delays caused by the COVID-19 pandemic, the family court conducted a trial on May 30–31 and June 2, 2023. By the time the trial occurred, B.G. had not seen Grandparents in four years and expressed to the guardian ad litem that she did not wish to visit them. The family court found it was in the best interest of the child for custody to stay with Aunt and Uncle but for Grandparents to be granted regular visitation. This appeal followed.

## ISSUES ON APPEAL

1. Whether the family court erred in finding that Grandparents were the de facto custodians of B.G. and thus entitled to court-ordered visitation with her.

2. Whether the family court erred in finding that Grandparents were the psychological parents of B.G. and thus entitled to court-ordered visitation with her.

---

[2] After learning of the 2017 order granting custody to Aunt and Uncle, Grandparents properly amended their initial pleadings to address the order and to add Uncle as a necessary party.

3.  Whether the family court erred in finding that this is not solely a grandparent visitation case but that the "grandparent visitation" statute still warranted an award of visitation to Grandparents.

4.  Whether the family court erred by awarding attorney's fees to Grandparents.

## STANDARD OF REVIEW

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Thus, this court "has jurisdiction to find facts in accordance with its view of the preponderance of the evidence." *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011). "However, this broad scope of review does not require the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Tomlinson v. Melton*, 428 S.C. 607, 611, 837 S.E.2d 230, 232 (Ct. App. 2019). "Therefore, the appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the court's findings." *Id.* at 611–12, 837 S.E.2d at 232.

## LAW/ANALYSIS

Before addressing the issues on appeal, we note the family court stated in its final order that the 2017 order granting legal and physical custody to Aunt and Uncle "has no priority in this matter." The court found Grandparents were de facto custodians and psychological parents when the 2017 order was filed and, therefore, they should have been made parties and notified of any custody cases involving B.G. In the family court's view, the 2017 order had "no priority" because it violated Grandparents' due process rights.[3] As a result, the family court treated the present case as a dispute between non-parent third parties, thus depriving Aunt and Uncle of the presumption afforded to parents and legal guardians that their decisions are in the child's best interest. *See Camburn v. Smith*, 355 S.C. 574, 579, 586 S.E.2d 565, 567 (2003) ("A court considering [third party] visitation over a parent's objection must allow a presumption that a fit parent's decision is in the child's best interest.").

---

[3] The family court cited section 63-15-60(E) of the South Carolina Code (2010), which states: "If the court has determined by clear and convincing evidence that a person is a de facto custodian, the court must join that person in the action as a party needed for just adjudication under the South Carolina Rules of Civil Procedure."

The family court misrepresents the 2017 order. A family court judge has no authority to ignore or overrule the order of another family court judge. *S.C. Dep't of Soc. Servs. v. Laura D.*, 386 S.C. 382, 386, 688 S.E.2d 130, 132 (Ct. App. 2009). The 2017 order—which was issued by a family court judge—is valid on its face and was clearly agreed to by Mother. It grants Aunt and Uncle "sole care, custody, and control of the minor child . . . with all rights for medical care, education[,] and other rights."[4] We find that "other rights" includes the right to make decisions about visitation. *See* S.C. Code Ann. § 63-7-20(13)(a)(vi) (Supp. 2024) (transferring to legal guardians the parental right to "determine the nature and extent of the child's contact with other persons").[5] Thus, Aunt and Uncle are entitled to the presumption that their decisions are in B.G.'s best interest, which "may be overcome only by showing compelling circumstances, such as significant harm to the child, if visitation is not granted." *Camburn*, 355 S.C. at 579, 586 S.E.2d at 568 (denying visitation to grandparents even though visitation would have been a stabilizing factor in the children's life because there were no compelling circumstances to overcome the presumption that the parents' decisions were in the children's best interest).

## I.      De Facto Custodians

The de facto custodian statute[6] "provides for the best interests of the child to prevail by allowing visitation and custody rights to third parties when justified." *Alukonis v. Smith*, 431 S.C. 41, 56, 846 S.E.2d 600, 608 (Ct. App. 2020). The statute balances the third party's rights against the superior rights of natural parents by requiring third parties to prove by clear and convincing evidence that a natural parent is unfit or that other compelling circumstances warrant third-party custody or visitation. *Id.* at 56–57, 846 S.E.2d at 608–09. The statute states as follows:

---

[4] The order also states it "shall not be modified or changed except by mutual consent and agreement of the parties expressed in writing."

[5] The 2017 order does not expressly create a legal guardianship, as it simply incorporates the parties' private custody agreement. However, the relationship established by the custody agreement mirrors a legal guardianship in substance and in form. Further, we note that the language "care, custody, and control" of the child is the same used by the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57 (2000), and by our supreme court in *Camburn* when discussing the fundamental right to raise children and the presumption that parents' decisions are made in their children's best interest.

[6] S.C. Code Ann. § 63-15-60 (2010).

(A) For purposes of this section, "de facto custodian" means, unless the context requires otherwise, a person who has been shown by clear and convincing evidence to have been the primary caregiver for and financial supporter of a child who:

(1) has resided with the person for a period of six months or more if the child is under three years of age; or

(2) has resided with the person for a period of one year or more if the child is three years of age or older.

Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child must not be included in determining whether the child has resided with the person for the required minimum period.

(B) A person is not a de facto custodian of a child until the court determines by clear and convincing evidence that the person meets the definition of de facto custodian with respect to that child. If the court determines a person is a de facto custodian of a child, that person has standing to seek visitation or custody of that child.

(C) The family court may grant visitation or custody of a child to the de facto custodian if it finds by *clear and convincing evidence* that the child's natural parents are unfit or that *other compelling circumstances* exist.

. . . .

(E) If the court has determined by clear and convincing evidence that a person is a de facto custodian, the court must join that person in the action as a party needed for just adjudication under the South Carolina Rules of Civil Procedure.

S.C. Code Ann. § 63-15-60 (emphases added).

Here, the family court concluded Grandparents were B.G.'s de facto custodians. We disagree with this conclusion. The question turns on whether the legislature intended for the de facto custodian statute to apply to custodians from any point in a child's life or only to recent custodians. On the one hand, by using the language "has resided" instead of "resided" in subsections (A)(1) and (2), the underlying intent may have been to recognize the most recent custodian-in-fact at the point just prior to the filing of the suit. On the other hand, limiting de facto custodian standing to recent custodians may not provide for the child's best interests. Under this interpretation, guardians who raised a child for a decade but who no longer serve as primary caregivers would lose standing under this statute to seek custody or visitation.

This question has not been directly answered in South Carolina. Some states include a time limit in the "de facto custodian" statute itself. *See* Minn. Stat. § 257C.01, subd. 2(a) (2022) ("'De facto custodian' means an individual who has been the primary caretaker for a child who has, *within the 24 months immediately preceding the filing of the petition*, resided with the individual . . . ." (emphasis added)); Tex. Fam. Code Ann. § 102.003(a)(9) (West 2019) (conferring third-party standing for visitation to "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months *ending not more than 90 days preceding the date of the filing of the petition*" (emphasis added)). After a review of other states' laws,[7] we hold that de facto custodians lose standing once they no longer discharge the duties incidental to a parental relationship. *See, e.g.*, *McCrillis v. Hicks*, 518 S.W.3d 734, 742 (Ark. Ct. App. 2017) ("[A]lthough [the third party] had stood in loco parentis to the child for the first three years of the child's life, she had ceased to have that bond with the child, and it was no longer in the child's best interest to allow visitation."); *In re Scarlett Z.-D.*, 28 N.E.3d 776, 789 (Ill. 2015) ("[O]nce the person alleged to be *in loco parentis* no longer discharges all duties incident to the parental relationship, that person is no longer *in loco parentis* and the parental relationship is terminated."); *Jones v. Barlow*, 154 P.3d 808, 814 (Utah 2007) ("[T]he in loco parentis doctrine does not contemplate a perpetual grant of rights and is, in fact, ill-suited to convey such rights."). *But see* Cal. St. Fam. Juv. R. 5.534(a) ("On a sufficient showing, the court may recognize

---

[7] *See* 143 Am. Jur. *Trials* 441 § 1 (2016) ("[M]any states enacted 'de facto' parent custody statutes to address the ability of third parties to obtain custody of a minor child. While some states call it 'in loco parentis,' most of these statutes contain the same elements." (footnote omitted)).

the child's present or *previous custodian* as a de facto parent and grant him or her standing to participate as a party in the dispositional hearing and any hearing thereafter at which the status of the dependent child is at issue." (emphasis added)).

Aunt and Uncle argue the family court erred by finding Grandparents were de facto custodians because Grandparents "could not have shown that [B.G.] has resided with them for over one (1) year on the filing date of either [the 2017 order] or in this action, as she has lived with [Aunt and Uncle] since 2015." Thus, in Aunt's and Uncle's view, the determinative factor is whom the child has lived with for at least one year immediately prior to the filing of the suit. We need not decide today the exact moment at which de facto custodians lose this status.[8] When Grandparents brought this suit, five years had passed since B.G. lived with them. At that point, Grandparents were clearly no longer discharging the duties of a parental relationship. Further, the record before us does not contain any compelling circumstances that would warrant an award of visitation to Grandparents. Thus, the family court erred in finding Grandparents were de facto custodians.[9]

## II. Psychological Parents

---

[8] We do note that de facto custodian status does not expire immediately or automatically once a child no longer lives with the custodian. In *Alukonis*, this court found clear and convincing evidence that a grandfather was a de facto custodian when the child "resided over half his life with [g]randfather prior to the commencement of this action and [g]randfather was his primary caregiver during this time." 431 S.C. at 57, 846 S.E.2d at 609. In that case, the child's father assumed custody after the mother's death and refused to allow the maternal grandfather any contact with the child. *Id.* at 47–48, 846 S.E.2d at 604. The grandfather brought the action within a few months after the mother's death. *Id.* at 48, 846 S.E.2d at 604. The court found the grandfather to be a de facto custodian even though several months had passed since the child lived with him. *Id.* at 57, 846 S.E.2d at 609.

[9] The family court did not find that compelling circumstances warranted its grant of visitation to Grandparents as de facto custodians. Rather, it erroneously stated that "[Grandparents] were the de facto custodians . . . which would warrant an award of visitation for [Grandparents] on its own." While Aunt and Uncle did not raise the issue of compelling circumstances on appeal, we take this opportunity to note that meeting the statutory definition of de facto custodian does not automatically warrant custody or visitation—the family court still has the discretion to grant visitation or custody but only if clear and convincing evidence shows that a child's natural parents are unfit or that other compelling circumstances exist. S.C. Code Ann. § 63-15-60(C).

> Before visitation may be awarded over a parent's objection, one of two evidentiary hurdles must be met: the parent must be shown to be unfit by clear and convincing evidence, or there must be evidence of compelling circumstances to overcome the presumption that the parental decision is in the child's best interest.

*Camburn*, 355 S.C. at 579–80, 586 S.E.2d at 568. "[T]he family court can in fact grant visitation to a third[]party over a fit parent's objection when faced with compelling circumstances." *Middleton v. Johnson*, 369 S.C. 585, 601, 633 S.E.2d 162, 171 (Ct. App. 2006). "The compelling circumstances standard encompasses a situation where . . . a third party has attained psychological parent status." *Id.* at 605, 633 S.E.2d at 173. When deciding whether to award visitation to a psychological parent, "[t]he standard to be applied is whether compelling circumstances exist" and "visitation must actually be in the child's best interest." *Id.*

A psychological parent-child relationship exists when a third party steps in to fill a "parental void." *See Middleton*, 369 S.C. at 598, 633 S.E.2d at 169 ("[W]hen both biological parents are involved in the child's life, a third party's relationship with the child could never rise to the level of a psychological parent, as there is no parental void in the child's life."). "Establishing psychological parenthood is a difficult undertaking." *Id.* at 604, 633 S.E.2d at 172. South Carolina has adopted a four-part test to determine whether a psychological parent-child relationship exists between a child and a third party, which requires the petitioner to show:

> (1) that the biological or adoptive parent[s] consented to, and fostered, the petitioner[']s formation and establishment of a parent-like relationship with the child;
>
> (2) that the petitioner and the child lived together in the same household;
>
> (3) that the petitioner assumed obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's support, without expectation of financial compensation; [and]

(4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature.

*Marquez v. Caudill*, 376 S.C. 229, 242, 656 S.E.2d 737, 743 (2008) (first and third alterations in original (quoting *Middleton*, 369 S.C. at 596–97, 633 S.E.2d at 168)). "[O]nce established, the bond between the psychological parent and child should not be unilaterally severed." *Middleton*, 369 S.C. at 604, 633 S.E.2d at 172–73.

Here, the family court determined that Grandparents were B.G.'s psychological parents. This determination was incorrect. While we acknowledge that Grandparents may have been B.G.'s psychological parents at one point, this status lapsed when B.G. moved in with Aunt and Uncle. Once Grandparents took on a traditional grandparent role, they could no longer claim to be B.G.'s psychological parents. Further, with Aunt and Uncle assuming parental roles, no "parental void" needed to be filled by Grandparents. Additionally, because Mother agreed to grant Aunt and Uncle legal custody in 2016—an agreement that did not terminate her parental rights—we do not find that Mother continued to consent to and foster a parent-like relationship between B.G. and Grandparents. Moreover, once Aunt and Uncle became legal custodians, they certainly did not foster a parent-like relationship between B.G. and Grandparents. For this reason, the family court erred in finding Grandparents were B.G.'s psychological parents.[10]

---

[10] The family court also erroneously found that Grandparents' status as psychological parents would warrant an award of visitation on its own. We note this error to emphasize our concern that the family court misunderstood the doctrines involved in this case. In a dispute between mere third parties, psychological-parent status may be sufficient to justify a custody award. *See Marquez*, 376 S.C. at 245, 656 S.E.2d at 745 (awarding custody to a stepfather over a grandmother because of the stepfather's status as a psychological parent and because "[a] biological parent [was] not involved" and "there [was] no reason to recognize the superior rights of a natural parent"). But in a dispute between a biological parent and a third party, psychological-parent status is not sufficient on its own to warrant custody or visitation—there must be other compelling circumstances. *See Middleton*, 369 S.C. at 604, 633 S.E.2d at 172 (awarding visitation to a psychological parent because his absence from the child's life "caused and [would] continue to cause significant harm" to the child and thus the circumstances were compelling enough to meet the evidentiary hurdle third parties must overcome when seeking visitation over the objection of a fit parent). Aunt and Uncle, under the custody agreement, gained the superior rights of natural parents concerning visitation. Thus, even if Grandparents

## III. Grandparent Visitation

"It is well-settled that parents have a protected liberty interest in the care, custody, and control of their children.  This is a fundamental right protected by the Due Process Clause."  *Camburn*, 355 S.C. at 579, 586 S.E.2d at 567 (citing *Troxel*, 530 U.S. at 65–66).  "A court considering grandparents' visitation over a parent's objection must allow a presumption that a fit parent's decision is in the child's best interest."  *Id.* at 579, 586 S.E.2d at 567.  But this presumption may be overcome "by showing compelling circumstances . . . if visitation is not granted."  *Id.* at 579, 586 S.E.2d at 568.  It is not enough that grandparents may be a "stabilizing factor" in a child's life.  *Middleton*, 369 S.C. at 602–03, 633 S.E.2d at 171–72.  "The fact that a child may benefit from contact with the grandparent, or that the parent's refusal is simply not reasonable in the court's view, does not justify government interference in the parental decision."  *Camburn*, 355 S.C. at 579, 586 S.E.2d at 568.

Section 63-3-530 of the South Carolina Code (2024) provides:

> (A) The family court has exclusive jurisdiction:
>
> . . . .
>
>> (33) to order visitation for the grandparent of a minor child where either or both parents of the minor child is or are deceased, or are divorced, or are living separate and apart in different habitats, if the court finds that:
>>
>>> (1) the child's parents or guardians are unreasonably depriving the grandparent of the opportunity to visit with the child, including denying visitation of the minor

---

were properly determined to be B.G.'s psychological parents, visitation would only be warranted if compelling circumstances existed to overcome the presumption that Aunt and Uncle's decision to deny visitation was made in B.G.'s best interest.  *See Alukonis*, 431 S.C. at 59–60, 846 S.E.2d at 610 ("The fact that one is determined to be a psychological parent does not, by itself, override the rebuttable presumption that it is in the best interests of a child to be in the custody of his biological parent.").

child to the grandparent for a period exceeding ninety days; and

(2) awarding grandparent visitation would not interfere with the parent-child relationship; and:

> (a) the court finds by clear and convincing evidence that the child's parents or guardians are unfit; or

> (b) the court finds by clear and convincing evidence that there are compelling circumstances to overcome the presumption that the parental decision is in the child's best interest.

On appeal, Aunt and Uncle argue: "Although the [family court] asserts that this case 'is not a Grandparent Visitation' case, the [family court] erroneously finds that those standards could justify a visitation order in this matter." The family court's characterization of this case as "not a grandparent visitation case" stemmed from its treatment of the case as a dispute between mere third parties. That is, the family court did not find the grandparent visitation cases applicable because the court did not ascribe a parental presumption to Aunt and Uncle. Further, the family court appeared to believe that Grandparents had superior rights because it determined they were de facto custodians and psychological parents. Regardless, the family court found that "if this were a grandparent visitation case, then all elements of the statute have been met by [Grandparents]."

The family court erred in finding section 63-3-530 inapplicable to this case. As discussed, the grant of legal custody to Aunt and Uncle carried with it the presumption that their decisions regarding visitation are made in B.G.'s best interests. For this reason, this case fits within the circumstances contemplated by section 63-3-530(A)(33) because the child's biological grandparents seek visitation over the objection of fit, legal custodians. But in applying this statute, we disagree with the family court that all elements have been met because we do not find clear

and convincing evidence of compelling circumstances that warrant visitation.[11] *See Marquez*, 376 S.C. at 249, 656 S.E.2d at 747 (holding that compelling circumstances justified ordering grandparent visitation over a fit parent's objection when the children's biological mother had passed away and the grandmother sought visitation to maintain ties between the children and the deceased mother's family); *Middleton*, 369 S.C. at 603, 633 S.E.2d at 172 (holding that compelling circumstances justified a grant of visitation to the child's stepfather who the family court found was the child's psychological parent because the record was "replete with evidence" illustrating that the mother's refusal to allow the stepfather to visit with the child had caused the child "significant harm").

We are troubled by the facts in this case, particularly because the record contains scant evidence of a legitimate reason for Aunt and Uncle's decision to cut Grandparents out of B.G.'s life. Instead, Aunt and Uncle's decision to deny visitation to Grandparents appears to be based on Aunt's own strained relationship with Grandmother. But ultimately, we do not find compelling circumstances that warrant court-ordered visitation. Aunt and Uncle must not be required to justify their decisions about who spends time with B.G. *See Camburn*, 355 S.C. at 580, 586 S.E.2d at 568. As guardians with sole care, custody, and control of the child, Aunt and Uncle have the right to permit or deny visitation as they see fit, and Grandparents face a substantial burden in overcoming the presumption that these decisions are made in B.G.'s best interest. *Id.* We do not find compelling circumstances to overcome that presumption in this case. Unlike in *Marquez*, there is no risk of B.G. being isolated from her mother's family because Aunt is Mother's sister and because the custody agreement provides liberal visitation to Mother. Further, unlike in *Middleton*, the record does not contain any evidence that Aunt's refusal to allow Grandparents to visit B.G. has caused B.G. significant harm.[12] In fact, B.G. expressed to the guardian ad litem that she had no desire to visit her grandparents.

---

[11] The remaining elements of section 63-3-530(A)(33) have been met. B.G.'s parents live separate and apart in different habitats: the biological father stayed in Louisiana and has never been involved in B.G.'s life. B.G.'s guardians have denied Grandparents the opportunity to visit for a period exceeding ninety days. And awarding grandparent visitation would not interfere with the parent-child relationship between Aunt and Uncle and B.G..

[12] In *Middleton*, the child's teacher contacted the school's guidance counselor because the child seemed sad and was not acting like himself. 369 S.C. at 603, 633 S.E.2d at 172. The counselor testified that, during group sessions for children who had experienced loss, the child expressed grief over losing his father (referring to his stepfather). *Id.*

In sum, because we do not find clear and convincing evidence of compelling circumstances that justify ordering visitation over Aunt and Uncle's objection, we hold the family court erred by awarding visitation to Grandparents.[13]

### IV. Attorney's Fees

After considering the relevant factors, the family court awarded attorney's fees to Grandparents as the prevailing party. *See Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991); *Lewin v. Lewin*, 396 S.C. 349, 355–56, 721 S.E.2d 1, 4 (Ct. App. 2011). Based on our decision to reverse the family court's visitation award, we find that Grandparents are no longer the prevailing party. Thus, we reverse the family court's award of attorney's fees to Grandparents. *See Richland County v. Kaiser*, 351 S.C. 89, 97, 567 S.E.2d 260, 264 (Ct. App. 2002).

## CONCLUSION

Accordingly, the decision of the family court is

**REVERSED.**

**WILLIAMS, C.J., and KONDUROS, J., concur.**

---

[13] In acknowledgement of Mother's testimony in which she expressed it would be in B.G.'s best interest for the whole family to work together, we encourage Aunt and Uncle to foster an ongoing relationship between B.G. and Grandparents.